UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ISHAWU AWUDU, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:25-cv-00550-MPB-MJD |
| | ) | |
| SAMUEL OLSON, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING FURTHER PROCEEDINGS**

Petitioner Ishawu Awudu is detained at the Clay County Jail in Brazil, Indiana, under the authority of U.S. Immigration and Customs Enforcement ("ICE"). He petitions for immediate release or, in the alternative, a bond hearing pursuant to 8 U.S.C. § 1226(a), at which Respondents bear the burden of justifying their continued detention by clear and convincing evidence. The crux of his petition is that ICE improperly detained him under a statute making him ineligible for bond and that Respondents' refusal to consider bond makes his continued detention unlawful. The government argues in response that Petitioner's detention is lawful, that it does not violate due process, and that the only available remedy, if any, is a bond hearing.

Collectively, the parties' submissions demonstrate that Petitioner is statutorily eligible for bond and that his continued detention without a bond hearing is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Therefore, the petition is granted.

1

## I. Facts

Petitioner is a citizen of Ghana who entered the United States without inspection on January 9, 2024. Dkt. 1 at 6. On January 20, 2024, the Department of Homeland Security ("DHS") placed him in removal proceedings pursuant to 8 U.S.C. § 1229a. Dkts. 1 at 6 and 1-1 at 1.

If Petitioner was an "alien arriving in the United States," the government was obligated by statute to immediately order him removed from the United States or refer him to an asylum officer, at which point he would have been subject to either removal or mandatory detention pending review of his claims. 8 U.S.C. § 1225(b)(1). Alternatively, if Petitioner was "an applicant for admission" to the United States, the government was obligated to detain him pending resolution of removal proceedings. 8 U.S.C. § 1225(b)(2).

The government did not exercise either authority. Instead, a Customs and Border Patrol ("CBP") official issued a notice to appear directing him to appear before an immigration judge. *See* dkt. 1-1 at 1-2. The notice identifies Petitioner as "an alien present in the United States who has not been admitted or paroled," not as "an arriving alien." *Id*. at 1. The notice does not identify Petitioner as an applicant for admission. *Id.* The CBP official ordered Petitioner released on his own recognizance. Dkts. *Id*. at 7. His removal proceeding is pending, as is an asylum application. *Id*. at 6.

Petitioner asks the Court for habeas corpus relief based on the government's violation of the Immigration and Nationality Act and his Fifth Amendment due process rights. Dkt. 1 at 19-20. The respondents argue in response that the petition is premature because Petitioner has yet to appear before an immigration judge to request bond, because he is properly detained pursuant to 8 U.S.C. § 1225, which does not provide for bond, and because Petitioner's continuing detention does not violate due process. Dkt. 10 at 4-12.

## II. Exhaustion

Petitioner has yet to appear before an immigration judge. Respondents argue that, as a result, the instant petition is premature because Petitioner has not exhausted all available administrative remedies. Petitioner argues that any attempt to exhaust his administrative remedies would be futile because an IJ would deny his request for a bond hearing under the recent Bureau of Immigration Appeals ("BIA") decisions *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), and *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025). Both *Yajure Hurtado* and *Q. Li* held that IJs do not have the authority to hold a bond hearing where the moving noncitizen entered the country without inspection.[1] Because Petitioner entered the country without inspection, if he were to move for a bond hearing, an IJ following these decisions would have to decline jurisdiction over the issue.

Respondents do not cite a statute requiring Petitioner to move for a bond hearing before an IJ before seeking habeas relief. In the absence of a statutory mandate, the Seventh Circuit holds that "sound judicial discretion governs" whether courts should require exhaustion. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). Requiring Petitioner to exhaust his administrative remedies here would be futile. As another trial court in the Seventh Circuit has noted, "[Respondents'] argument is Kafkaesque. Requiring Petitioner to exhaust his administrative remedies would be futile because Respondents' position is that he is *statutorily precluded* from obtaining the relief he seeks. The Court declines to require exhaustion because [t]here is nothing to indicate the BIA would change its position [once] the BIA has predetermined the statutory issue." *Valencia v. Noem*, No. 25-CV-12829, 2025 WL 3042520, at *2 (N.D. Ill. Oct. 31, 2025)

---

[1] As will be explained below, *Matter of Hurtado's* rationale is that noncitizens who entered without inspection are subject to the mandatory detention provision in § 1225, not the discretionary detention provision in § 1226(a).

(internal quotes and citations omitted). As the government has done in other cases, Respondents here repeat the argument that Petitioner must exhaust his administrative remedies, but they do not deny that immigration judges and the BIA are bound to find Petitioner ineligible for bond pursuant to *Yajure Hurtado* and *Q. Li*. The Court finds that exhaustion of Petitioner's administrative remedies, such as they are, would be futile and, therefore, not required.

### III. Eligibility for Bond

Petitioner contends that the government's authority to detain him derives from 8 U.S.C. § 1226(a), which states, in relevant part:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. [P]ending such decision, the Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on [. . .] bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or [. . .] conditional parole.

The government, however, argues that they are authorized to detain him by § 1225(b)(2)(A), which states: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a" removal proceeding. The BIA provided its analysis of this authority as follows:

> Aliens, like the respondent, who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer. Remaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitute an "admission." *See* INA § 101(a)(13)(A), 8 U.S.C. § 1101(a)(13)(A) (2018) (defining "admission"). Likewise, being arrested pursuant to a warrant and placed into removal proceedings does not constitute an admission. Therefore, just as Immigration Judges have no authority to redetermine the custody of arriving aliens who present themselves at a port of entry, they likewise have no authority to redetermine the custody conditions of an alien who crossed the border unlawfully

without inspection, even if that alien has avoided apprehension for more than 2 years.

*Yajure Hurtado*, 29 I. & N. Dec. at 228.

Petitioner bases his petition on the proposition that this reasoning—and therefore § 1225—does not apply to his arrest and detention. He maintains that the government released him on his own recognizance under § 1226 and that he remained subject to § 1226 when it redetained him this year.

The government responds that, because Petitioner has applied for asylum, "he is plainly seeking admission to the United States," and so he is subject to mandatory detention under § 1225(b)(2)(A). Dkt. 10 at 9.

Since the BIA issued *Yajure Hurtado*, the federal courts have issued dozens of opinions in habeas actions by detainees claiming to be subject to § 1226 but who the government insists are subject to mandatory detention under § 1225. The Court is not aware of any case where an Article III Court has affirmed that § 1225 applies to an alien who entered the United States without inspection, was apprehended, then was released on his own recognizance subject to supervision, and then was arrested pursuant to a warrant. If such a case exists, the respondents have not cited it in their brief.

Respondents rely on four district court cases, *Rojas v. Olson, et al.*, No. 25-CV-1437-BHL, 2025 WL 3033967, at *5-10 (E.D. Wis. Oct. 30, 2025); *Barrios Sandoval v. Acuna, et al.*, No. 6:25-CV-01467, 2025 WL 3048926, at *5 (W.D. La. Oct. 31, 2025); *Vargas Lopez v. Trump*, No. 25-cv-526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025), and *Chavez v. Noem*, No. 25-CV-23250CAB-SBC, 2025 WL 2730228 at (S.D. Cal. Sept. 24, 2025). In *Barrios Sandoval* and *Vargas Lopez*, neither petitioner was arrested on an ICE warrant, which precluded the application of § 1226. 2025 WL 3048926, at *5; 2025 WL 2780351 at *7. But here, ICE issued and served a warrant

5

to Petitioner. Dkts. 11-2 at 5 and 11-5 at 1-2. In *Rojas* and *Chavez*, although the courts' recitations of the factual records are sparse, it does not appear that petitioners had previous interaction with immigration officials and, in *Chavez*, Petitioners were not arrested pursuant to warrants, as is the case here. *See* 2025 WL 3033967, at *1-2; 2025 WL 2730228, at *1. In all of these cases, moreover, the courts' reasoning drew heavily from *Yajure Hurtado*, a non-binding decision that—deviating from longstanding practice—endorsed detentions pursuant to § 1225(b) rather than § 1226(a), reasoning which this Court has not adopted. *See Singh v. Bondi, et al.*, No. 1:25-CV-02101-SEB-TAB, 2025 WL 3029524, at *4-*6 (S.D. Ind. Oct. 30, 2025); *Alejandro v. Olson*, No. 1:25-CV-02027-JPH-MKK, 2025 WL 2896348, at *6 (S.D. Ind. Oct. 11, 2025); *B.D.V.S. v. Forestal*, No. 1:25-CV-01968-SEB-TAB, 2025 WL 2855743, at *2 (S.D. Ind. Oct. 8, 2025).

In this case, the Respondents' actions and their representations to Petitioner demonstrate that his detention is governed by § 1226, and detention pursuant to § 1225 was, therefore, incorrect.

If Petitioner was an applicant for admission by virtue of their entry into the United States, the government was statutorily obligated to detain him under § 1225(b) when it initially apprehended him. It did not do so. Instead, it released him on his own recognizance. In such cases, § 1226 is the *only* basis for release. Under § 1225, the government could only remove him or detain him pending review by an asylum officer. The fact that the government released Petitioner on his own recognizance is strong evidence that he is subject to § 1226 rather than § 1225.

The facts of Petitioner's redetention also show that his custody is pursuant to § 1226. An alien "cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226." *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *4 (S.D.N.Y. Aug. 13, 2025). The provisions "can be reconciled only if they apply to different classes of aliens." *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *11 (D. Mass. Aug.

6

19, 2025). According to ICE's own documents, Petitioner was an alien arrested and detained pursuant to a warrant. Dkt. 10-2 at 1. This makes them eligible for bond under the plain language of § 1226(a). *See Campos Leon v. Forestal*, No. 1:25-CV-01774-SEB-MJD, 2025 WL 2694763, at *3 (S.D. Ind. Sept. 22, 2025) ("It is difficult to find that § 1226(a) carries any meaning if the aliens it expressly addresses—those arrested and detained pursuant to warrants—are not actually subject to its provisions.").

Further, "the Government has affirmatively decided to treat" Petitioner "as being detained under Section 1226(a) and it cannot now be heard to change its position to claim that [he is] detained under Section 1225(b)." *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025) (citing *Kennedy v. Kijakazi*, No. 22-2258, 2023 WL 1990303, at *3 (7th Cir. Feb. 14, 2023)); *see also Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2741654, at *9 (N.D. Cal. Sept. 26, 2025) ("[T]he government cannot switch tracks and subject Petitioners to mandatory detention under section 1225(b)(2) when the government has instead placed Petitioners in removal proceedings under section 1229a and released them on their own recognizance under section 1226(a)."); *cf. Fornalik v. Perryman*, 223 F.3d 523, 530 (7th Cir. 2000) ("Where . . . the last office to act has full knowledge of the actions taken by other branches of the same agency, it cannot simply issue a decision and expect its pronouncement to have no effect. . . . We REVERSE the judgment of the district court and REMAND this case with instructions to the Chicago office of the INS to respect the deferral decision currently in effect, unless and until, *through authorized procedures*, the agency as a whole comes to a final decision on Boguslaw Fornalik's status.") (emphasis added).

7

### IV. Fifth Amendment Due Process

Under the heading, "Continued Detention is Reasonable," the respondents argue that continued detention does not implicate Petitioner's Fifth Amendment Due Process protections and offer the following:

> ICE can lawfully detain the Petitioner because he is inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i). To the extent he is making a due process claim in his petition, it should be rejected because he has not been detained longer than six months, thus his continued detention is reasonable under *Demore v. Kim*, 538 U.S. 510, 528 (2003) (explaining that detention during removal proceedings is a necessary part of removal proceedings); *see also Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) (holding post-removal that Government cannot detain an alien "indefinitely," limiting "post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States" and finding a detention period of six months is "presumptively reasonable."). Here, the Petitioner has only been detained since October 27, 2025, so there are no due process concerns.

Dkt. 10 at 11-12.

The respondents' argument is misplaced. Petitioner does not deny that the government has authority to charge him as removable, arrest him, and detain him during the pendency of his removal proceedings. He argues—correctly—that, within that process, he is eligible to request bond, the Attorney General has discretion to grant it, and the continuing failure to provide a bond hearing violates his rights. The Respondents' position and Petitioner's are not mutually exclusive.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment*." Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas*, *v. Davis*, 533 U.S. 678, 690 (2011).

To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part balancing test set forth in *Matthews*. The court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. at 335.

Applying this analysis, Petitioner's detention without a bond hearing violates procedural due process. Petitioner has a cognizable private interest in being freed from unlawful detention without any opportunity for a bond hearing. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (explaining that one of the "most elemental of liberty interests" is to be free from detention). There is a severe risk of erroneous deprivation because a hearing would require the IJ to make an individualized determination evaluating dangerousness and flight risk. Given that an IJ has not made this determination, Petitioner's current detention might well be erroneous. Last, the government's interest is slight insofar as an IJ has *not* determined that Petitioner poses a flight risk or a danger to the community. Petitioner merely asks that the government hold a hearing to make this determination. As other courts have concluded in cases involving similar factual circumstances, Petitioner's detention without a bond hearing amounts to a due process violation. *See, e.g.*, *Ochoa Ochoa*, 2025 WL 2938779, at *4 (finding detention under § 1225(b)(2) without a bond hearing to violate petitioner's due process rights); *Lopez Benitez*, 2025 WL 2371588, at *13; *Doe v. Moniz*, No. 1:25-cv-12094-IT, 2025 WL 2576819, at *11 (D. Mass. Sept. 5, 2025) ("In sum, the *Mathews* factors weigh in favor of Petitioner, and the court finds that his detention without a bond hearing violates his Due Process rights.").

## V. Conclusion and Further Proceedings

Petitioner seeks a writ of habeas corpus requiring the Respondents to release him immediately or afford him a bond hearing. The Court has determined that Petitioner need not exhaust his claims for the reasons set out in Part II. And the Court has found, as explained in Part III, that Petitioner's detention is governed by 8 U.S.C. § 1226(a), he is therefore eligible for (although not necessarily entitled to) bond, and the government's failure to provide a bond hearing, based on detention pursuant to § 1225, was factually and legally incorrect, making his current detention "in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c)(3), and entitling him to a writ of habeas corpus. A bond hearing must be conducted forthwith.

The petition for a writ of habeas corpus is **granted**. Respondents will have **seven days** to notify the Court that Petitioner has received a bond hearing, affording him all proceedings and rights provided by § 1226 and its corresponding regulations, and that his claims for release on bond have been heard and considered on the merits. The **clerk is directed** to enter **final judgment**.

**IT IS SO ORDERED.**

Dated: November 17, 2025

_Matthew P. Brookman_
Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel of record